IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEVLA PAUNOVIC

    Plaintiff

    v.                          Civil No. ELH-17-2448

GENESIS HEALTHCARE, LLC

    Defendant

## MEMORANDUM OPINION

In a First Amended Complaint (ECF 12), plaintiff Mevla Paunovic has sued her former employer, Genesis Healthcare, LLC ("Genesis"),[1] defendant. In her suit, which contains four counts and is supported by exhibits, plaintiff seeks compensatory damages, back pay, and "front pay," based on claims of retaliation, age discrimination, and wrongful discharge, in violation of the Maryland Health Care Worker Whistleblower Protection Act, Md. Code (2014 Repl. Vol.), §§ 1-501 to 1-506 of the Health Occupations Article ("H.O."), and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code (2014 Repl. Vol.), § 20–601 to § 20–610 of the State Government Article ("S.G.").[2]

Defendant has moved to dismiss Counts I and III, and to strike Count IV. ECF 13. The motion is supported by a memorandum (ECF 13-1) (collectively, the "Motion"). Plaintiff

---

[1] Defendant submits that Genesis Eldercare Rehabilitation Services, LLC—not Genesis Healthcare, LLC—was plaintiff's employer and is therefore the proper party to this suit. ECF 1 at 1 n.1; ECF 13 at 1, n.1; ECF 15 at 1 n.1.

[2] As discussed, *infra*, suit was filed in the Circuit Court for Baltimore County. ECF 2. Defendant removed the case to federal court, based on diversity of citizenship. ECF 1.

opposes the Motion (ECF 14), supported by a memorandum (ECF 14-1) (collectively, the "Opposition"). Defendant has replied. ECF 15.

No oral argument is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons set forth below, I shall grant the Motion.

## I. BACKGROUND

Paunovic was employed by Genesis from October 31, 2013 until June 30, 2017, as a licensed Certified Occupational Therapy Assistant. ECF 12, ¶¶ 1, 3. In April 2015, Paunovic's immediate supervisor began to harass her, including by questioning her skills in front of patients and other therapists. *Id.* ¶¶ 10–12. That same month, Paunovic asked to be transferred to another Genesis facility. *Id.* ¶ 7. She was informed that she could do so if she was willing to take a reduction in pay, even though two of her younger colleagues were permitted to transfer without taking any pay cut. *Id.* ¶¶ 8–9. Paunovic decided to remain at her current location, but complained to her clinical supervisor about her immediate supervisor's harassment. *Id.* ¶ 13.

On May 22, 2015, Paunovic's clinical supervisor had "an argument" with plaintiff's immediate supervisor. *Id.* ¶ 14. In the aftermath of this dispute, Paunovic's immediate supervisor "began to severely harass" plaintiff. *Id.* As a result, Paunovic requested a meeting with yet another of her supervisors, the Director of Rehabilitation. *Id.* ¶ 15. The next day, Paunovic suffered a heart attack, allegedly due to the stress she endured from the harassment. *Id.* ¶ 16. When Paunovic returned to work, she again met with her supervisors. They acknowledged the harassment, but allegedly took no action to address it. *Id.* ¶ 19.

Paunovic filed a grievance in January 2016 with Genesis's Area Director. *Id.* ¶ 20. She complained about an annual review she received at the end of 2015 and about another instance of harassment. *Id.* Specifically, Paunovic alleged that the Director of Rehabilitation had verbally

and physically threatened her during a dispute regarding an incomplete progress note for a patient. *Id.* ¶¶ 21–22. On January 11, 2016, the Area Director determined that there was no evidence to support plaintiff's allegation, and issued a written warning for insubordination and a corrective action plan. ECF 12, ¶ 23. Five months later, Paunovic objected to the corrective action plan, but her objection was ignored. *Id.* ¶ 24.

In July 2016, Paunovic became concerned that her patients were being billed incorrectly. *Id.* ¶ 25. Her concern related to the manner in which group therapy patients were being charged. *Id.* Although Genesis's policy is to bill group therapy patients only for the portion of each therapy session in which he or she receives individualized attention, Paunovic believed patients were being billed for their entire sessions. *Id.* ¶¶ 28–30. On July 20, 2016, she raised this concern with both the Area Director and the "Director of Rehab" for the Cromwell/Loch Raven Campus. *Id.* ¶¶ 25, 29. These individuals told Paunovic to continue billing each group therapy patient for the entire 60 minutes of each therapy session, *id.* ¶¶ 33, 38, and assured her that the computer would ensure that each patient was billed properly. *Id.* ¶ 34.

However, the billing change did not occur. *Id.* Therefore, plaintiff alleged that "Medicare, Medicaid and managed care (PPS) are being defrauded when each patient in a 4 patient, one hour group is allocated the entire 60 minutes of service." *Id.*

In September 2016, the Director of Rehab for the Cromwell/Loch Raven Campus approached Paunovic in the gym and asked her to complete a self-evaluation, which Paunovic refused to do in light of prior bad experiences with self-evaluation. *Id.* ¶ 39. The Director subsequently accused Paunovic of speaking about personnel matters in a public area, as a result of which Human Resources issued Paunovic another corrective action plan. *Id.* ¶ 40. On a seemingly unrelated note, Human Resources asked Paunovic if she was willing to continue

performing group therapy sessions. *Id.* Paunovic said she was, and agreed to bill each group therapy patient for the entirety of his or her session. *Id.*

Although Paunovic had received only positive performance evaluations at that point, she began to believe she was going to be discharged. *Id.* ¶ 41. As a result, on November 16, 2016, she filed a charge of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). ECF 12, ¶ 42. On May 5, 2017, the EEOC issued a notice of her right to sue. *Id.*

Over a month later, on June 16, 2017, Paunovic reported Genesis's group billing practice as Medicare fraud, via the Medicare fraud tip line. *Id.* ¶ 43. The next week, on June 20, 2017, Genesis discharged Paunovic. *Id.* ¶ 44. At the time, plaintiff was 66 years of age. *Id.*, ¶ 55.

On June 27, 2017, Paunovic filed a second complaint with the EEOC. She alleged age discrimination, retaliation, and discharge. *Id.* ¶ 45.

Paunovic filed suit against Genesis in the Circuit Court for Baltimore County on July 12, 2017. *See Mevla Paunovic v. Genesis Healthcare, LLC*, Civil Action No. 03-C-17-006717. A Special Agent from the Department of Health and Human Services, Office of Inspector General, met with Paunovic at her home on August 21, 2017, concerning the alleged Medicare fraud. *Id.* ¶ 46. On August 25, 2017, the EEOC again issued a notice of right to sue. *Id.* ¶ 45.

On August 25, 2017, Genesis removed the state court case to this Court, based on diversity of citizenship. *See* 28 U.S.C. § 1332. ECF 1. After Genesis filed an initial Motion to Dismiss, ECF 9, Paunovic filed an Amended Complaint. ECF 12. Genesis then filed the pending Motion. ECF 13.[3]

---

[3] The case was initially assigned to Judge J. Frederick Motz. It was reassigned to me on October 18, 2017. *See* Docket.

4

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(6)

Genesis has moved for partial dismissal under Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of a complaint. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to ensure that defendants are provided with "fair notice" of the claim(s) made against them and the "grounds" for entitlement to relief. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim

asserted." *Johnson v. City of Shelby, Miss.*, ––– U.S. –––, 135 S.Ct. 346, 346 (2014) (per curiam).

"When determining whether a complaint fails to comply with Rule 8(a), 'courts have looked to various factors, including the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel.'" *Rush v. Am. Home Mortg., Inc.*, WMN-07-854, 2009 WL 4728971, at *4 (D. Md. Dec. 3, 2009) (emphasis added) (internal citations omitted) (quoting *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (per curiam)). A court may properly dismiss a complaint under Rule 12(b)(6) for failure to comport with Rule 8(a) if the complaint "does not permit the defendants to figure out what legally sufficient claim the plaintiffs are making and against whom they are making it." *McGuirt*, 114 F. App'x at 559.

Thus, a complaint requires more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co.*, 637 F.3d 435, 440 (4th Cir. 2012) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir.

2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### B. Rule 12(f)

Pursuant to Fed. R. Civ. P. 12(f), Genesis has moved to strike Count IV, which alleges retaliation. Rule 12(f) provides, in part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See, e.g., Haley Paint Co. v. E.I. Du Pont De Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012). In determining whether to grant a motion to strike, the court "enjoys wide discretion . . . in order 'to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial.'" *Id.* at 336 (citation omitted).

"Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation and internal quotation marks omitted); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores*, 227 F. App'x 239, 247 (4th Cir. 2007). Therefore, "[w]hen reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek*

7

*v. Serv. Ctrs. Corp.*, PJM–10–1202, 2010 WL 4449419, at *8–9 (D. Md. Nov. 5, 2010) (citation omitted).

### III. DISCUSSION

### I. Motion to Dismiss Count I

In Count I, Paunovic alleges that Genesis violated the Maryland Health Care Worker Whistleblower Protection Act ("HCWWPA"), H.O. §§ 1-501 to 1-506. The HCWWPA prohibits an employer from "tak[ing] . . . any personnel action as reprisal against an employee because the employee" either "[d]iscloses . . . to a supervisor or board" or "[o]bjects to" an "activity, policy, or practice of the employer that is in violation of a law, rule or regulation." *Id.* §§ 1-502(1), (3). However, this prohibition only applies if, among other things, "[t]he employer's activity, policy, or practice that is the subject of the employee's disclosure poses a substantial and specific danger to the public health or safety." *Id.* § 1-503(2).

Genesis argues that Count I must be dismissed because, among other things, under H.O. § 1-503(2), Paunovic does not allege an activity or violation that "posed a substantial and specific danger to public health or safety." ECF 13-1 at 21. To my knowledge, only two cases have addressed H.O. § 1-503(2).

In the first, *Lark v. Montgomery Hospice, Inc.*, 994 A.2d 968, 414 Md. 215 (2010), Lark, a nurse, objected to a number of practices engaged in by her employer, Montgomery Hospice, Inc. (the "Hospice"). Lark's primary complaint was that the Hospice was delivering "'starter packs' of medications that "contained adult narcotic doses" to "all pediatric patients, including ones where the family situation is unstable with many children and with little close supervision in the house." *Id.* at 970–71, 414 Md. at 219–220. She also complained about the "improper documentation of narcotic drugs," the treatment of patients "without current legal orders," or

"with expired orders," and "without signatures on initial 'start of care' orders," and the failure of her supervisors both to "follow-up on documentation deficits or on missing medical orders and documentations" and to "initiate safety precautions with a patient that had a high risk of hemorrhage." *Id.* at 971, 414 Md. at 220.

The Court of Appeals of Maryland noted that Lark had "the burdens of production and persuasion on the issue of whether any of the violations that she reported to her supervisor actually did pose a *substantial and specific danger* to the public health or safety," but decided that "a fact-intensive inquiry [wa]s necessary to resolve that issue." *Id.* at 984, 414 Md. at 242 (emphasis in *Lark*). Specifically, the court found that a jury viewing the evidence in the light most favorable to Lark could find that she complained about conduct that "constituted violations of the Maryland Controlled Dangerous Substances Act—a statute that establishes important public policy with respect to the dispensation of controlled substances," and therefore posed a substantial danger to public safety. *Id.* at 984, 414 Md. at 242–43.

In the second case, *Rangarajan v. Johns Hopkins Health System Corp.*, Civ. No. WMN–12–1953, 2014 WL 6666308 (D. Md. Nov. 21, 2014), the plaintiff, a nurse practitioner, objected to her employer's practice of billing office visits handled by nurse practitioners as if they were handled by physicians. Judge Nickerson of this Court held that the nurse practitioner had "not pled sufficient facts to implicate public safety." *Id.* at *3. Specifically, he found that "the only danger Plaintiff alleged was the depletion of Medicare's coffers, which, without more, does not pose a substantial danger to public safety." *Id.*

Here, Paunovic objected to Genesis's practice of billing group therapy patients for the full length of their therapy sessions, rather than for the portion of each session in which they received individualized attention. ECF 12, ¶¶ 25–30. She offers two explanations for how this

practice posed a "substantial and specific danger to the public health or safety." First, she claims that "patients were being shortchanged physical therapy; therefore, their health was being shortchanged." ECF 14-1 at 3. This explanation is merely conclusory, and therefore unavailing.

Second, plaintiff claims that because "[t]he amount of time allocated to each patient is billed to a patient's insurance company regardless of . . . the type of insurance the patient carries," "if the patients . . . are being shortchanged their needed physical therapy . . . Medicare will not allow them to receive more than what was billed for by Defendant." *Id.* at 5–6. This explanation is not entirely clear. Paunovic seems to argue that if Medicare believes a patient needs, for example, five hours of physical therapy, it will cover only five sessions, rather than the twenty it would cover if it knew the patient was receiving only fifteen minutes of individualized attention per session.

This argument rests upon multiple unfounded assumptions: (1) that Medicare assesses coverage this way and is unaware that the therapy is occurring in groups and, more fundamentally, (2) that the only portion of a group therapy session warranting coverage is the portion in which the patient receives individualized attention. The plaintiff in *Rangarajan* could have made the same basic argument—that Medicare would have covered a greater quantity of treatment had it known each patient was treated by a nurse practitioner, rather than a doctor. Such an attenuated argument would have been as unpersuasive in that case as it is here.

Just like the nurse practitioner in *Rangarajan*, what Paunovic alleges is billing fraud. Billing fraud does not pose "a substantial and specific danger to the public health or safety." Therefore, Paunovic does not state all the elements of a HCWWPA claim. Accordingly, Count I will be dismissed.

**II. Motion to Dismiss Count III**

In Count III, Paunovic alleges the common law tort of wrongful discharge. She asserts that she was subjected to a hostile work environment and eventually discharged "in retaliation and for pretextual reasons, i.e., for toasting bread." ECF 12, ¶ 65. She notes she was discharged on June 20, 2017, just a few weeks after she filed a charge with the EEOC claiming age discrimination. *Id.* ¶¶ 45, 67, 68.

Tort liability for wrongful discharge under Maryland law has been recognized "as a judicially-created exception to the employment at-will doctrine." *Newell v. Runnels,* 407 Md. 578, 646, 967 A.2d 729, 769 (2009) (citing *Adler v. Am. Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981)).

In order to assert a viable claim of wrongful discharge, an employee must demonstrate that "a clear mandate of public policy . . . was contravened by the discharge." *Porterfield v. Mascari II, Inc.,* 374 Md. 402, 423, 823 A.2d 590, 602 (2003). The particular public policy must be "reasonably discernible from prescribed constitutional or statutory mandates." *Wholey v. Sears Roebuck,* 370 Md. 38, 54, 803 A.2d 482, 491 (2002). Because the purpose of the tort is to "provide a remedy for *otherwise unremedied* violations of public policy," *Porterfield,* 374 Md. at 423, 823 A.2d at 602 (emphasis added), the tort is not viable if the statutes that establish the public policy at issue "already provide an adequate and appropriate civil remedy for the wrongful discharge." *Id.* In other words, wrongful discharge is a supplementary tort limited "to cases where an employee's termination contravened a clear mandate of public policy and not to allow the cause of action would leave the employee without a remedy." *Newell,* 407 Md. at 647, 967 A.2d at 769; *see Molesworth v. Brandon,* 341 Md. 621, 672 A.2d 608 (1996).

Genesis argues that Count III must be dismissed because the remedies set forth in the

HCWWPA and the FEPA—the statutes establishing the public policies underlying Paunovic's wrongful discharge claim—already provide exclusive remedies for the claims at issue. Genesis is correct.

There are two bases for Paunovic's assertion that her discharge was wrongful. First, she claims she was discharged because she challenged Genesis's billing practices. ECF 12, ¶¶ 63–66. The HCWWPA establishes a Maryland public policy of encouraging health care workers to report violations of laws, rules, and regulations by health care providers. *See* H.O. §§ 1-501 to 1-503. It does so by protecting those workers from retaliation when they make such reports. *Id.*

Under H.O. § 1-505, where an employer violates the HCWWPA, a court may:

(1) Issue an injunction to restrain continued violation of this subtitle;

(2) Reinstate the employee to the same, or an equivalent position held before the violation of § 1-502 of this subtitle;

(3) Remove any adverse personnel record entries based on or related to the violation of § 1-502 of this subtitle;

(4) Reinstate full fringe benefits and seniority rights;

(5) Require compensation for lost wages, benefits, and other remuneration;

and

(6) Assess reasonable attorney's fees and other litigation expenses against:

(i) The employer, if the employee prevails; or

(ii) The employee, if the court determines that the action was brought by the employee in bad faith and without basis in law or fact.

Second, Paunovic claims she was discharged because she complained to the EEOC about age discrimination. ECF 12, ¶¶ 67–68. The FEPA establishes a Maryland public policy barring discrimination against a worker based on age. *See* S. G. § 20–606(a)(1)(i). Where an employer violates the Maryland FEPA, the court can remedy that violation by:

12

> (i) enjoining the respondent from engaging in the discriminatory act;
>
> (ii) ordering appropriate affirmative relief, including the reinstatement or hiring of employees, with or without back pay;
>
> (iii) awarding compensatory damages; or
>
> (iv) ordering any other equitable relief that the administrative law judge considers appropriate.

S.G. § 20–1009(b); *see also id.* § 20–1013(d) (clarifying that courts and administrative law judges can issue the same remedies).

In other words, the HCWWPA and the FEPA—the two Maryland statutes enunciating the public policies underlying Paunovic's wrongful discharge claim—"already provide . . . adequate and appropriate civil remed[ies] for the wrongful discharge" at issue. *See Porterfield*, 374 Md. at 423, 823 A.2d at 603. As a result, Paunovic's independent wrongful discharge claim cannot survive.

A tort action for wrongful discharge will not lie in Maryland if "the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy." *Parks v. Alpharma, Inc.*, 421 Md. 59, 74 n.7, 25 A.3d 200, 208 (2010) (recognizing that an action for wrongful discharge will not lie if the public policy at issue arises from a statute with its own remedy); *see also Insignia Residential Corp. v. Ashton*, 359 Md. 560, 562, 755 A.2d 1080, 1080-81 (2000) (noting that "an action for abusive discharge will not lie when the public policy violated by the discharge arises from a statute that provides its own remedy for the violation"). Put another way, the wrongful discharge claim here is subject to dismissal because it is premised on public policies contained in statutes that provide remedies. *Porterfield*, 374 Md. at 423, 823 A.2d at 603. Specifically, HCWWPA (Count 1) and FEPA

(Count II) provide adequate remedies for wrongful discharge, and therefore Paunovic's wrongful discharge claim in Count III cannot survive.

The argument Paunovic makes in her Opposition confirms that she misapprehends the tort of wrongful discharge under Maryland law. Paunovic argues that her wrongful discharge claim is "an alternative statement of a claim" under Fed. R. Civ. P. 8(d)(2). ECF 14-1 at 8. In essence, Paunovic asks the Court to allow her to pursue her wrongful discharge claim in the event that "the HCWWPA is determined to not be applicable." *Id.* This is not permissible.

To be sure, Fed. R. Civ. P. 8(d)(2) permits a party to assert claims and defenses that are internally inconsistent. Rule 8(d)(2) states: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

But, the viability of the wrongful discharge claim in Count III depends on whether the statutes that enunciate the public policies underlying the claim set forth adequate remedies. If so, the statutes are the sole avenues for vindicating those public policies. A plaintiff's inability to establish a violation of a statute reflects the legislature's considered judgment that she is not entitled to relief under that statue. The court cannot circumvent that determination by permitting plaintiff to pursue a separate wrongful discharge claim.

Accordingly, Count III will be dismissed.

### III. Motion to Strike Count IV

In Count IV, Paunovic alleges a claim for retaliation, without reference to any statute. Genesis argues that Count IV must be dismissed to the extent it is construed as a "tort claim under the wrongful discharge theory" or an HCWWPA claim "alleging retaliation for allegedly reporting billing improprieties," because then Count IV is redundant. *See* ECF 13-1 at 10.

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading . . . any redundant . . . matter." Motions to strike are generally disfavored, however. *See Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Therefore, "the court must view the pleading under attack in a light most favorable to the pleader.'" *Piontek v. Serv. Ctrs. Corp.*, PJM–10–1202, 2010 WL 4449419, at *8–9 (D. Md. Nov. 5, 2010) (citation omitted).

On its face, Count IV appears redundant. Count I alleges that Genesis violated the HCWWPA by retaliating against Paunovic for objecting to its billing practices. ECF 12, ¶¶ 47–52. Count II alleges that Genesis violated the FEPA by discriminating against plaintiff based on her age and by retaliating against plaintiff for complaining about age discrimination. ECF 12, ¶¶ 53–60. And, Count IV again alleges these two forms of retaliation, without introducing new factual allegations or identifying a separate cause of action. *See* ECF 12, ¶¶ 70–71 (alleging retaliation for complaining about age discrimination); *id.* ¶ 72 (alleging retaliation for objecting to billing practices). Nor did Paunovic avail herself of the opportunity to use the Opposition to clarify her theory of Count IV. *See* ECF 14-1 at 8–10 (citing Fed. R. Civ. P. 8(d)(2) for the proposition that plaintiffs may allege claims in the alternative, but failing to identify the legal basis for Count IV).

In the Amended Complaint and in the Opposition, Paunovic loosely references the retaliation standard under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, albeit not by name. *See* ECF 12, ¶¶ 72–74 (alleging "protected conduct," an "adverse action," and "a causal connection"); ECF 14-1 at 8–9 (same). The same standard applies in the context of a claim of retaliation under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq. See Johnson v. Mechanics & Farmers Bank*, 309 Fed. App'x 675, 684 (4th Cir. 2009) (per curiam). And, in her Opposition plaintiff cites

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), a Title VII case. *See* ECF 14-1 at 9.

Nevertheless, such assertions fall far short of a claim under VII or the ADEA. And, the Amended Complaint was filed after the case was removed to this Court, so that plaintiff could have included claims under federal law in Count IV, if that was her intention.

Therefore, I shall dismiss the retaliation claim in Count IV as duplicative, but without prejudice. And, I shall grant plaintiff until August 10, 2018, to file a Second Amended Complaint that revises Count IV, if she so chooses.

## CONCLUSION

For the foregoing reasons, I shall grant Defendant's Motion. A separate Order follows.

 July 17, 2018                                                         /s/
Date                                                                            Ellen L. Hollander
                                                                              United States District Judge